ELON G. MARBLE v. THOMAS WHALEY et al.

CONSTITUTIONAL LAW: CHANCERY: PROVISION FOR TRANSFER OF CAUSES: ART. 114, P. 557, REVISED CODE.—Art. 114, p. 557, of the Revised Code, which provides that the chancellor and vice-chancellors, at the term of their respective courts next preceding the first Monday in November, A.D. 1857, shall make an order, transferring each case then remaining undetermined in their several courts, to the Chancery Court of the proper county, is constitutional; and an order so made, though without consent of the parties, is valid, and vests jurisdiction over the cause, in the court to which the transfer has been ordered.

APPEAL from the Chancery Court of Warren county. Hon. J. S. Yerger, chancellor.

*Yergers* and *Anderson*, for appellant.

*Brooke* and *Smedes*, for appellees.

HANDY, J. delivered the opinion of the court.

The only question in this case is, whether an order of the Superior Court of Chancery, made at a term held in October, 1857, transferring a cause then depending therein, to a Chancery Court, to be held in a proper county, without the consent of the parties, is valid, and sufficient to give jurisdiction of the cause to the Chancery Court to which it was transferred.

The third amendment to the Constitution, adopted on the 6th February, 1856, provides that the Superior Court of Chancery, "shall continue as now (then) organized, until the first Monday of November, 1857, for the disposition of causes now (then) depending therein;" and that "the legislature shall provide by law for the preservation of the records," &c., . . . "and also for the transfer of all causes that may remain undetermined therein, to other courts, for final decision." Rev. Code, 38. Thus, provision is made for the time when the Superior Court of Chancery should cease to exist, and continuing its powers until that time; and power is conferred upon the legislature, in anticipation of that fact, to provide for the transfer of *all causes remaining undetermined* therein, to other courts.

It is contended that the language of the latter clause of this article, has reference only to causes remaining undetermined at the time the Superior Court of Chancery ceased to exist; and this construction is said to be evident, from the previous language of the article, continuing the existence of the court *for the disposition of causes* then depending therein, until the first Monday of November, 1857.

There can be but little doubt, from this language, but that the general powers of the court were kept in force until the day mentioned; but the term "*disposition*," is very general, and cannot be justly restricted to the mode of disposition of causes, by that court, existing previous to the adoption of the amendment.   It should be construed with reference to the alteration then made, and the circumstances in which the causes then depending in that court were placed, in consequence of the amendment.   By the amendment, the court was to cease at a stated time, retaining its power to dispose of causes until that period.   Under such circumstances, it is most reasonable to presume, that the amendment contemplated that all the powers should be preserved to the court, which were necessary, either to determine the cause in that court, or to transfer it to such other court for decision, as was vested with jurisdiction of it by the same amendment.

But if this were an incorrect view of the subject, the latter clause appears to be sufficiently broad to confer power on the legislature, to provide for the transfer of all cases remaining undetermined in the court, after jurisdiction was conferred, in matters of equity generally, upon the county Chancery Courts; and such jurisdiction was conferred by the amendment itself, on the 6th February, 1856.   The words, "all causes that may remain undetermined therein," cannot, by fair construction, be confined to the time when the Superior Court of Chancery should cease to exist. The language is general, and may as well have reference to causes remaining undetermined in the court, at the date the amendment took effect, as at the date when the powers of the court should cease. And such appears to be the view taken of it by the same legislature which adopted the amendment.

The act in relation to Chancery Courts, passed at the same session at which the amendment was adopted, provides for the transfer

of causes from the Chancery Courts, as then existing, to the Chancery Courts created by this amendment, in three states of case. Art. 112, authorizes the transfer, at any time after the passage of the act, by consent of parties; Art. 113, provides for the transfer of causes remaining undetermined in the Superior Court of Chancery and Vice-Chancery Courts, on the first Monday of November, 1857; and Art. 114, provides, that, to facilitate the transfer of undetermined causes, it should be the duty of the chancellor, at the term next preceding the first Monday of November, 1857, to call over the general docket, and, in each case remaining undetermined, or depending in the High Court of Errors and Appeals, to make an order for the transfer of the same to a court, where the same might be thereafter cognizable, under the act. Rev. Code, 557, § 8. The first article relates to transfer by consent, at any time after the passage of the act; the second, to causes which might, for any reason, remain undisposed of in the Chancery Courts, on the first Monday of November, 1857; and the last, and most comprehensive provision, to the transfer of all causes remaining undetermined in those courts, or depending in this court, by order to be made by the chancellor, at the last term held by him preceding the first Monday of November, 1857.

This last provision, shows that the latter clause of the amendment was considered, by the same legislature which adopted it, as giving the power to the legislature, to provide for the transfer of causes remaining undetermined in the Superior Court of Chancery and Vice-Chancery Courts, before the time when those courts should cease to exist; and it is, therefore, entitled to much weight, as an exposition of the amendment.

But it is said, that the Art. 114, refers alone to cases in this court, on appeal or writ of error from the Chancery Court, and does not embrace cases remaining undetermined in the Superior and Vice-Chancery Courts. But this construction is, manifestly, not tenable. The language is, that the order of transfer shall be made "in each case *remaining undetermined, or depending in the High Court of Errors and Appeals.*" The words "*remaining undetermined,*" cannot be taken to refer to cases in this court; for those cases are fully embraced by the immediately succeeding words, "*or depending* in the High Court of Errors and Appeals;"

and, by the construction contended for, the latter words would be superfluous and useless. But the words *remaining undetermined,* are separated from the words *depending,* &c., both by the disjunctive *or,* and by punctuation; which indicates that distinct classes of cases were referred to,—first, all causes that might, at the time of the order of transfer, remain undetermined in the Superior and Vice-Chancery Courts, and, secondly, such as might be depending in this court, on writ of error or appeal from those courts.

.The whole article refers to undetermined causes generally, whether in the Superior and Vice-Chancery Courts, or in this court from those courts; and hence the duty imposed upon those courts, of calling over the general docket, which embraces all the cases undetermined in those courts. Such a duty would scarcely have been imposed, if the order of transfer required, had had reference alone to the cases in this court from those courts, on writ of error or appeal; and especially, as the Art. 120 of the act, gives to this court, the power to direct the transfer of any such cause, when determined here, to the Chancery Court which may have cognizance of it.

But, in another point of view, it is clear that the Art. 114, cannot be held to be unconstitutional, even if the amendment in question had not contained the latter clause.

When that statute was passed, and before the first Monday of November, 1857, the Superior Court of Chancery as well as the County Chancery Court, were in existence, both having full general jurisdiction of matters of equity. The amendment in question provided for the extinction of the Superior Court of Chancery, at a specified time, retaining its powers until that period had transpired. If there had been no further provision of the amendment, it would have been within the undoubted power of the legislature to provide, in what manner the jurisdiction of causes in that court remaining undecided when its existence should terminate, should pass to the County Chancery Court, to take effect after the first Monday of November, 1857, and to authorize the chancellor to make an order of that character, before that time. The order of transfer provided for by the Art. 114, is in anticipation of the extinction of the Superior Court of Chancery, and takes effect in law after that time. This provision of the statute is, therefore, no more objectionable than the provision made by the act for having

causes transferred by act of the parties, either by consent under Art. 112, or after the court had ceased to exist, under Art. 113.

Let the decree be affirmed.